# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## CIVIL CASE NO. 1:10cv127
### [Consolidating 1:10cv127, 1:10cv128, 1:10cv129]

| | |
|---|---|
| **JOSIAH JACOB DEYTON,** <br> **ANDREW RYAN DEYTON,** and <br> **JONATHAN NEIL KONIAK,** <br><br> Petitioners, <br><br> vs. <br><br> **ALVIN W. KELLER, JR.,** <br> Secretary of the North Carolina <br> Department of Corrections; and <br> **LANDER CORPENING,** <br> Superintendent of Foothills <br> Correctional Institution, <br><br> Respondents. | **MEMORANDUM OF DECISION** <br> **AND ORDER** |

**THIS MATTER** is before the Court on the Respondents' Motions for Summary Judgment [Doc. 8, Doc. 18, Doc. 19] and their Motion to Consider Two New Landmark Decisions of the United States Supreme Court regarding the Deferential Standards of Review [Doc. 23].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, United States Magistrate Judge Dennis L. Howell was designated to consider the Motions for Summary Judgment and to submit

recommendations for disposition. On November 1, 2010, the Magistrate Judge filed a Memorandum and Recommendation in which he recommended granting the Respondents' Motions for Summary Judgment and dismissing the Petitioners' Petitions under 28 U.S.C. §2254 for a Writ of Habeas Corpus by a Person in State Custody. [Doc. 20]. The Petitioners timely filed Objections to that recommendation. [Doc. 21].

The Motion to Consider Two New Landmark Decisions of the United States Supreme Court regarding the Deferential Standards of Review was filed after the Magistrate Judge entered his Memorandum and Recommendation. Counsel denominated this as a motion when it should rather have been captioned as notice of subsequent authority and the Court will treat it as such.

## PROCEDURAL AND FACTUAL BACKGROUND

The Petitioners have not objected to the Magistrate Judge's recitation of the procedural and factual background. [Doc. 21]. Having reviewed the same and finding it supported by the record, it is adopted with supplementation as shown herein.

Briefly stated, the Petitioners were indicted in April 2008 and charged with eleven counts of felony robbery from Ridgeview Presbyterian Church and

individual members of the congregation thereof. [Doc. 1-2].[1] The robbery was alleged to have been conducted with the use of firearms and dangerous weapons which placed in danger the lives of the congregation members, in violation of N.C. Gen. Stat. §14-87. [Id.]. They were also charged with one count of conspiracy to commit robbery with a dangerous weapon, in violation of N.C. Gen.Stat. §14-2.4. [Id.]. Each of the Petitioners entered into plea agreements with the State. The Petitioners were sentenced on August 25, 2008 during a consolidated sentencing hearing before Superior Court Judge James L. Baker, Sr. [Doc. 1-3; Doc. 1-7]. During that sentencing hearing, the Petitioners consented to the summary of the incident recounted by the Assistant District Attorney. [Doc. 1-6; Doc. 1-7].

As so recounted, the Petitioners entered Ridgeview Presbyterian Church on Sunday April 13, 2008 during the morning service and using handguns, robbed individual members of the church as well as the collection plate. [Doc. 1-6 at 16-17; Doc. 1-7 at 9-12]. During the robbery, Petitioner Koniak bound the wrists of one worshiper and a gun carried by Petitioner Josiah Deyton discharged into the floor near a pew when he bent down to

---

[1]It is undisputed that each of the Petitioners was charged with the same crimes arising from the same incident. The Court therefore has cited only to the record of the lead case in this consolidated action. In addition, Petitioner Josiah Deyton was charged with one count of felonious larceny occurring on a different date. [Doc. 1-2].

take a cell phone. [Id.]. Petitioners also made threatening statements to the congregation. [Id.]. All three were quickly apprehended and evidence related to the crime was found inside their escape vehicle. [Doc. 1-6 at 18; Doc. 1-7 at 11-13]. After being advised of their rights, each of them waived the same and confessed. [Id.].

During the sentencing hearing, two members of the congregation who were present during the robbery gave victim impact statements to the court. Darlene Tipton made the following remarks:

> Instead of having the opportunity to welcome you to church on Sunday April 13th, you came in and took over the service but then God came in and he protected us and no one was killed during your terrific crime that you did against us. I'll never understand why or how you could do this cowardly act. You put a lot of thought in your crime and then picked a church that seemed very non-threatening to you. We were an easy target. You covered your hands and faces, came into our worship service with stolen guns and took sixteen (16) people hostage. You easily pointed a gun in Jerry Garland's chest and you duct taped Mike Tipton's hands behind his back very easily. The words and I think I have the words very correct, "If you leave the church before thirty minutes or call the police we'll come back and blow your f-ing heads off." They flowed very smoothly from your mouth. There wasn't a flinch or surprise when you fired the gun within a foot of Jennifer Hensley. We were ordered to put our phones, keys, money and purses in the offering plate. You stole and threatened us like you'd never be caught. Life has changed for each of us since this. New and emotional scars will always be there. Each time the church doors open now I think is this person going to rob us or kill us. No longer can I look at visitors in the same way. ... When I have come to your court appearances I see faces that are

sorry they got caught. I wish I thought you were sorry for what you did. You've committed a serious crime that deserves to be judged that way. The sixteen church members didn't commit a crime but we're suffering a mental and emotional nightmare as a result of the crime you did[.]

[Id. at 17-18].

Brian Tipton also addressed the court.

[This crime] took place in the house of God. Didn't take place somewhere down the road. It took place in the house of God where sixteen (16) people had gathered to worship. ... God directed all that did take place. No one in church was physically injured but emotional scars will continue to be there[.] ... All here today need to be prepared to stand before the righteous judge of God. ... You're standing before this Judge today. You'll stand before a just God ... at some point in your life and you need to be prepared for that.

[Id. at 18-19].

At the time of sentencing, the court addressed the Petitioners and advised that he did not come to the hearing with any preconceived notions of what their sentence should be despite having read all of the victim impact statements. [Id. at 33-34]. He announced that he desired to hear from people in support the Petitioners and listened as the mother of the Deyton brothers as well as a friend spoke. [Id.]. The judge then stated:

I was interested in reading what the church members might have thought that should be done to you and the church members after describing what they went through have indicated that the experience was a horrible experience for them. I mean even

more so than being robbed in a store or being robbed on a street or a highway or even worse than being broken in in their home. I mean if there's one place in the whole world that you ought to have the right to feel like that for just a few minutes–for just a few minutes you can put the dangers of the world away and that you can step to some degree of peace and solitude and serenity with some degree of safety it would be in a church. I think it was very appropriate what one person wrote that coming in God's house using God as a curse and to make people give up their possessions and taking God's money and threatening God's people, I can't imagine how evil these men are to have done this. That is the feeling of one person and I hope you realize that's an opinion that is or a feeling that is justified.[2] I mean you didn't just steal money from people. You took God's money. You took the Lord's money and those of us that believe that there is an Almighty and that there is a being that created this world to go in and then steal money that is being tendered by people for the furtherance of an earthly kingdom is just outrageous. It actually defies description[.] ... I mean you break in a church and you hold people at gunpoint. You wonder how in the world you thought you were going to get away with it[.] ... Stupid probably fits it pretty well but it's more than just an act that we can shake our heads about and wonder what civilization has come to for three young men to break in a church and rob people while they are at church in the process of worship. Gentlemen, this is just something that can't be tolerated ... there are times when you have to kind of draw the line and you have to say that there are some things that just can't be tolerated by society. I mean you can't just go in a church armed and tie people or hold them at gunpoint, threaten to kill them and rob the collection plate and rob them while they are there in the worship service and expect that the law is not going to come down just about as strongly as it can on you.

---

[2]The record shows that the sentencing court is referring to the opinion expressed by one of the victims in a written victim impact statement, and that this is not an expression of the Court's opinion. The Petitioners do not dispute this but claim that the judge "went far beyond merely restating what some of the victims had said." [Doc. 21 at 5].

There is scripture that says "Vengeance is mine sayeth the Lord" but every now and then I think the judicial system has to contribute what it can.

[Id. at 34-36].

Judge Baker then sentenced each of the Petitioners to 64-86 months for each of the ten counts of robbery, each to run consecutively, and to 25-39 months for the conspiracy count, to be suspended and consecutive to the sentence for the robbery convictions.[3] [Id. at 36-37]. As a result each of the Petitioners received a total sentence of 53 to 71 years. None of the Petitioners filed a direct appeal despite being represented by counsel.

Each of them filed a Motion for Appropriate Relief pursuant to N.C. Gen. Stat. §15A-1415 on August 21, 2009. [Doc. 1-1]. The presiding judge, Hon. James U. Downs, made the following ruling on the motions:

The defendant[s] received punishments of consecutive sentences of a substantial number of the offenses, but not all of them, and the punishments imposed were within the presumptive ranges in each case.

The defendant[s] entered [their] plea[s] of guilty without any assurances of whether any of [the] sentences would be consecutive or not.

Notwithstanding any comments that the sentencing Judge made regarding activities of the defendant[s] and [their] cohorts, the

---

[3]The Judge consolidated two of the robbery charges and thus sentenced each of the Petitioners to ten consecutive sentences on the robbery charges. [Id].

Court obviously exercised his discretion in sentencing the defendant[s] to less than that to which [they] pled to.

The Court find[s] nothing motivated the sentencing Judge, except for the atrocious conduct of the defendant[s] and [their] cohorts in accomplishing the crimes they committed.

[Doc. 1-11 at 1-2].

The Petitioners filed Petitions for Writs of <u>Certiorari</u> with the North Carolina Court of Appeals which were denied on June 17, 2010. [Doc. 1-12, Doc. 1-14]. Their Petitions for Writs of <u>Certiorari</u> filed with the North Carolina Supreme Court were denied on August 27, 2010. [Doc. 10]. The parties concede the pending habeas motion in this Court was timely filed.

## STANDARDS OF REVIEW

A district court reviews specific objections to a Memorandum and Recommendation under a <u>de novo</u> standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to." <u>Battle v. United States Parole Commission</u>, 834 F.2d 419, 421 (5th Cir.1987), <u>overruled on other grounds</u> <u>Douglass v. United Ervs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996). If a party makes only general objections, <u>de novo</u> review is not required. <u>Wells v. Shriners Hospital</u>, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether). "Section 636(b)(1) does not countenance a form of

generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*." United States v. Midgette, 478 F.3d 616, 621 (4th Cir.), cert. denied 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007) (emphasis in original).

Likewise, merely reiterating or incorporating the same arguments made in the pleading submitted to the Magistrate Judge does not warrant de novo review. Id.; Veney v. Astrue, 539 F.Supp.2d 841, 846 (W.D.Va. 2008); United States v. Wearing, 2011 WL 918343 (W.D.Va. 2011), affirmed __ F. App'x. __ , 2011 WL 4349623 (4th Cir. 2011). "Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection 'mak[es] the initial reference to the magistrate useless.'" Veney, 539 F.Supp.2d at 846. In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Midgette, 478 F.3d at 622. Here, the Petitioners have "incorporated by reference" the arguments made in their

pleadings before the Magistrate Judge. [Doc. 21 at 2]. Such an objection is no objection at all but merely a reiteration of arguments previously made with no direction as to the manner in which the Magistrate Judge's recommendations are faulty. Thus, the Court has carefully considered the record of the case and the Magistrate Judge's Memorandum and Recommendation but will conduct a <u>de novo</u> review only of the two specific objections raised.

A federal court reviewing an application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment may not grant such relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).

> First, a state-court decision is contrary to th[e] [Supreme] Court's precedent if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law. Second, a state-court decision is also contrary to th[e] [Supreme] Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it].

<u>Williams v. Taylor</u>, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "This is a difficult to meet and highly deferential standard for

evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (internal quotation and citation omitted). A petitioner carries the burden of proof. Id.

This case is before the Court on the Respondents' Motions for Summary Judgment.

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ... As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir.), cert. denied 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

"Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact" and entitlement to relief as a matter of law. Bouchat, 346 F.3d at 522 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d

265 (1986).  If this showing is made, the burden then shifts to the non-moving

party who must convince the Court that a genuine issue of fact does exist or

that judgment as a matter of law is inappropriate.  Id.

Nonetheless, in considering the facts for the purposes of a summary

judgment motion, the Court will view the pleadings and material presented in

the light most favorable to the nonmoving party.  Matsushita Electric Industrial

Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986).

The Petitioners made a request in their habeas petitions for an

evidentiary hearing.  Where the applicant for a writ of habeas corpus failed to

develop the factual basis of a claim in state court proceedings, the federal

court shall not hold an evidentiary hearing unless the applicant shows:

(A) the claim relies on--

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. §2254(e)(2).

Since the Petitioners have made no such claims and have not presented a forecast of evidence to show otherwise, the request for an evidentiary hearing is denied. This case will, therefore, be decided on "the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 131 S.Ct. at 1398. "It would be contrary to [the statutory] purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively <u>de novo</u>." <u>Id</u>., at 1399. The statutory deference "applies even where there has been a summary denial" by the state supreme court, as was the case here. <u>Id</u>., at 1402; <u>Harrington v. Richter</u>, __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011).

## DISCUSSION

The Petitioners have raised two specific objections: (1) the Magistrate Judge erroneously concluded that the standard of review prescribed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA) precludes the granting of any relief; and (2) the Magistrate Judge ignored the true meaning of the sentencing judge's statements in finding there was no due process violation.

The thrust of the Petitioners' arguments on both points is that the state court judge's statements at the sentencing hearing injected his own religious beliefs into his decision, thus violating their due process rights as clearly expressed by the Fourth Circuit Court of Appeals in <u>United States v. Bakker</u>, 925 F.2d 728 (4th Cir. 1991).

The Magistrate Judge first noted that the Supreme Court of the United States has never ruled on the issue of whether a judge's comments made during a sentencing hearing regarding his or her personal religious beliefs violates a defendant's right to due process. He thus concluded that <u>Bakker</u> is not controlling authority in determining whether the state court's decision is "contrary to or an unreasonable application of clearly established Federal law *as determined by the Supreme Court*." 28 U.S.C. §2254(d)(1) (emphasis added). The Petitioners object, claiming that they "do not and never have contended that <u>Bakker</u> is controlling authority. However, ... <u>Bakker</u> ought to be persuasive authority for the fact that due process in sentencing is offended under the facts presented by Petitioners." [Doc. 21 at 3].

The Supreme Court has held that under AEDPA, habeas relief is unavailable unless a state court decision is contrary to or an unreasonable application of clearly established law *as determined by that Court*. <u>Williams</u>,

14

529 U.S. at 381. "If [the Supreme] Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." Id. Nonetheless, the Court has also noted that "rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." Id., at 382. "Moreover, the determination whether or not a rule is clearly established at the time a state court renders its final judgment of conviction is a question as to which the federal courts must make an independent evaluation." Id. (internal quotation and citation omitted). However, "State-court decisions are measured against [the Supreme] Court's precedents as of the time the state court renders its decision." Cullen, 131 S.Ct. at 1399 (internal quotation and citation omitted).

> Under AEDPA, this Court may not look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. Lower federal court decisions, however, may be considered to determine whether a legal principle or right had been clearly established by the Supreme court at the time of the [state] Court's decision in this case.

Arnett v. Jackson, 393 F.3d 681, 688 (6th Cir.), cert. denied 546 U.S. 886, 126

S.Ct. 207, 163 L.Ed.2d 193 (2005).[4]  In Bakker the Fourth Circuit relied on

Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), in

which the Supreme Court stated that the sentencing process as well as the

trial must satisfy the requirements of due process.  Gardner, however, did not

consider and does not stand for the proposition that a sentencing court's

comments during sentencing concerning his personal religious beliefs violates

the defendant's due process rights.  Arnett, 393 F.3d at 688.

The Supreme Court has held that certain factors are constitutionally

impermissible or totally irrelevant to the sentencing process, including the

race, religion and political affiliation of a defendant.  Zant v. Stephens, 462

U.S. 862, 885, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).  The Fourth Circuit in

Bakker held that "similar principles apply when a judge impermissibly takes

his own religious characteristics into account in sentencing."  Bakker, 925

F.2d at 740.  But the Supreme Court has not so spoken and this Court "cannot

[itself] establish such a principle with clarity sufficient to satisfy the AEDPA

bar."  Williams, 529 U.S. at 381.  "[I]t is not an unreasonable application of

clearly established Federal law for a state court to decline to apply a specific

legal rule that has not been squarely established by this Court."  Harrington,

---

[4]The Court agrees with the Petitioners that Arnett is factually distinguishable from this case and cites it merely for the procedural issue quoted.

131 S.Ct. at 786 (quoting <u>Knowles v. Mirzayance</u>, 556 U.S. 111, __, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251, 261 (2009). The Court therefore rejects this Objection.

The Petitioners' second objection is rendered moot by the Court's conclusion that AEDPA precludes habeas relief. The Court nonetheless briefly addresses it based on the Petitioners' claim that the Supreme Court has clearly established that a defendant is entitled to due process in a sentencing hearing. This claim is based on the Supreme Court's comment in <u>Williams</u> that "rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule." <u>Williams</u>, 529 U.S. at 382.

During the sentencing hearing for the televangelist Jim Bakker, the sentencing court made the following remark: "[Bakker] had no thought whatever about his victims and *those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests*." <u>Bakker</u>, 925 F.2d at 740 (emphasis in original). The Court of Appeals vacated Bakker's sentence based on this language, holding:

> We recognize that a sentencing court can consider the impact a defendant's crimes have had on a community and can vindicate that community's interests in justice. To a considerable extent a sentencing judge is the embodiment of public condemnation and

social outrage. As the community's spokesperson, a judge can lecture a defendant as a lesson to that defendant and as a deterrent to others. If that were all that occurred here, the court would have been properly exercising its discretion, and we would be loathe to disturb what surely is an integral part of the sentencing process. Sentencing discretion, however, must be exercised within the boundaries of due process. In this case, the trial judge exceeded those boundaries. Courts have held that sentences imposed on the basis of impermissible considerations, such as a defendant's race or national origin, violate due process. While these cases focused on a defendant's characteristics, we believe that similar principles apply when a judge impermissibly takes his own religious characteristics into account at sentencing. Our Constitution, of course, does not require a person to surrender his or her religious beliefs upon the assumption of judicial office. Courts, however, cannot sanction sentencing procedures that create the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending. .. [T]he imposition of a lengthy prison term here may have reflected the fact that the court's own sense of religious propriety had somehow been betrayed.

Id. at 740-41.

In the Petitioners' cases, the sentencing court recounted what was reported from the victims and reiterated the comments made in open court by the Tiptons. He then condemned their behavior as exceeding all acceptable social boundaries. He pronounced that he was intent on vindicating the community's interest in justice and lectured the Petitioners about their conduct. He meant not only to provide a lesson to them but also to issue a deterrent to others. None of these statements by the sentencing court are

violative of due process.

Nonethless, the Court followed those comments with:

You took God's money.  You took the Lord's money and those of us that believe that there is an Almighty and that there is a being that created this world to go in and then steal money that is being tendered by people for the furtherance of an earthly kingdom is just outrageous. ...  There is scripture that says "Vengeance is mine sayeth the Lord" but every now and then I think the judicial system has to contribute what it can.

[Doc. 1-7 at 36].  These words are reminiscent of the words "those of us who do have a religion" as spoken by the sentencing court in Bakker.  A considerable semantic dissection of the statement of the sentencing judge would be necessary to determine the degree to which he was expressing his personal religious beliefs as opposed to acting "as the community's spokesperson" and expressing the "public condemnation and social outrage" engendered by the crime of the Petitioners.  Bakker, 925 F.2d at 740.  The Court does not undertake to do so here.

Even if this Court were to conclude that the sentencing court had run afoul of Bakker, it would make no difference as Bakker represents an extension of the precedents actually expressed by the Supreme Court.  This does, however, bring into sharp focus the need for Cullen and Williams to be applied correctly in this case in light of the precedent set in Gardner.  Even

though this Court has concluded that <u>Cullen</u> and <u>Williams</u> preclude any habeas review of whether the sentencing judge's expressions of religion violate due process, reasonable legal minds may differ in light of <u>Bakker</u> and <u>Gardner</u>.  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 349, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (citations omitted); <u>Swisher v. True</u>, 325 F.3d 225, 229 (4th Cir.), <u>cert. denied</u> 539 U.S. 971, 123 S.Ct. 2668, 156 L.Ed.2d 679 (2003) (when a district court denies a habeas petition on procedural grounds without reaching the constitutional claim, certificate should issue when jurists of reason would find it debatable whether district court was correct) (citations omitted).  For this reason, the Court will grant a Certificate of Appealability. 28 U.S.C. §2253(c).

## ORDER

**IT IS, THEREFORE, ORDERED** that the Respondents' Motion to Consider Two New Landmark Decisions of the United States Supreme Court regarding the Deferential Standards of Review [Doc. 23] is hereby **DENIED** as moot and the request is treated as a notice of subsequent authority.

**IT IS FURTHER ORDERED** that the Respondents' Motions for Summary Judgment [Doc. 8, Doc. 18, Doc. 19] are hereby **GRANTED** and the consolidated cases are hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that the Court hereby **GRANTS** to the

Petitioners a Certificate of Appealability to the United States Court of Appeals

for the Fourth Circuit .

Signed: September 26, 2011

Martin Reidinger
United States District Judge